UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

WESLA HANSON,

                              Plaintiff,

                    -v.-                              18 Civ. 695 (KPF)

SHANNON HANSON,                                      **<u>OPINION AND ORDER</u>**

                              Defendant.

------------------------------------------------------------

KATHERINE POLK FAILLA, District Judge:

Plaintiff Wesla Hanson brought this action against her estranged daughter-in-law, Defendant Shannon Hanson, to resolve issues concerning the ownership of a painting. Defendant then counterclaimed to allege breach of an oral agreement pursuant to which Defendant was to perform services related to the renovation of an apartment unit in exchange for a percentage of the proceeds from the sale or rental of that unit. Plaintiff now moves to dismiss Defendant's counterclaims on various grounds and, for the reasons set forth herein, her motion to dismiss is granted.

**BACKGROUND**[1]

**A.      The Complaint**

Plaintiff Wesla Hanson filed this action on January 25, 2018, seeking the return of a photorealist painting by John Baeder, titled "Blue Sky Diner," which

---

[1] The facts set forth herein are drawn from Plaintiff's Complaint (the "Complaint" (Dkt. #1)), and the First Amended Answer and Counterclaims (the "FAAC" (Dkt. #27)). For convenience, the Court refers to Plaintiff's memorandum of law in support of her motion to dismiss the counterclaims as "Pl. Br." (Dkt. #31), to Defendant's opposition to the motion to dismiss as "Def. Opp." (Dkt. #32), and to Plaintiff's Reply as "Pl. Reply" (Dkt. #33). For purposes of this motion, the Court accepts as true the well-pleaded allegations of the FAAC and, as appropriate, those of the Complaint.

Plaintiff alleges is in the wrongful possession of Defendant. (Compl. ¶ 2). Specifically, Plaintiff alleges that she and her late husband purchased the painting from the Baeder Gallery in 1975 and, since her husband's passing in 1996, she has been the sole owner of the painting. (*Id.* at ¶¶ 12-17). However, Plaintiff permitted her son, Duane Hanson, to display the painting in his home. (*Id.* at ¶ 18). Defendant is, or was at one point, married to Duane Hanson. (*Id.* at ¶ 6).[2] At some point during 2017, Defendant removed the painting from Duane Hanson's home without permission from Plaintiff. (*Id.* at ¶ 20).

Plaintiff first learned that Defendant was in possession of the painting in or about November 2017, at which point both Plaintiff and her son demanded that Defendant return the painting to Plaintiff. (Compl. ¶¶ 24-26). On December 14, 2017, Plaintiff again demanded the return of the painting by certified mail and by email. (*Id.* at ¶ 27). Defendant either refused or ignored these demands. (*Id.* at ¶¶ 26, 28). Plaintiff filed suit on January 25, 2018. (*Id.*).[3]

## B. The Counterclaims

On March 9, 2018, Defendant answered and counterclaimed for unjust enrichment, promissory estoppel, breach of an oral joint venture agreement, specific performance, and constructive trust. (Dkt. #14). On June 12, 2018,

---

[2]     Given its uncertainty, the Court refers to Duane Hanson as Defendant's husband.

[3]     On April 12, 2018, the parties filed a joint status letter informing the Court that Defendant had agreed to "relinquish the Painting to an art conservator retained by Plaintiff" (Dkt. #17), although the parties continue to dispute ownership of the Painting" (Pl. Br. 1). Defendant emphasizes that she delivered the painting for safekeeping during the pendency of this action, without prejudice to Defendant's ownership claim. (Def. Opp. 1).

Defendant filed an amended answer and counterclaims (the "FAAC"). (Dkt. #27).

Defendant recites as background that Plaintiff owned and controlled two apartment units through the Wesla E. Hanson Trust (the "Trust"), and permitted Defendant and her husband (Plaintiff's son) to reside in one of those units, without paying rent, for multiple years. (FAAC ¶¶ 65-71). Plaintiff maintained total control of the Trust, as both Trustor and Trustee, and retained power to revoke or amend the Trust in her sole discretion. (*Id.* at ¶¶ 65-67, 77-78).

Defendant and her husband are both attorneys. (FAAC ¶ 81). In or about 2013, Defendant and her husband discussed renovating both of Plaintiff's apartment units. (*Id.*). During the spring and summer of 2014, they met with architects and builders, and hired architects to draft plans for the renovation. (*Id.* at ¶ 82). In November 2014, Defendant thought of a plan to join the two apartments into one unit, "and to rent and, then sell, the resulting unit (the 'Combined Unit') following such renovation." (*Id.* at ¶ 83). "In or about January 2015, [D]efendant and [her husband] advised [P]laintiff of the Combined Unit idea." (*Id.* at ¶ 86). Plaintiff then "gave her final approval to the Combined Unit Idea," and "authorized [D]efendant and [her husband] to implement it." (*Id.* at ¶ 87).

"[P]laintiff requested [D]efendant to play the lead role in connection with the implementation of the Combined Unit Idea," including to draw from Defendant's expertise in real estate law and the New York real estate market,

and her personal connections in the New York City real estate market, "to bear primary responsibility" for implementing the renovation project. (FAAC ¶ 88). Accordingly, in connection with the renovation of the two apartment units, and the combination of those apartments into the "Combined Unit," Defendant "performed services comparable to the services performed by a real estate developer who serves as a managing member of a real estate joint venture." (*Id.* at ¶¶ 103, 105). Defendant also executed a promissory note in the amount of $600,000, and induced her sister to transfer $50,000 to her, in order to pay for the renovations. (*Id.* at ¶ 104).

Defendant alleges that she performed these services in reliance on an oral promise from Plaintiff that Defendant

> would receive compensation for her services in the form of a twenty-five per cent (25%) interest in the proceeds from the sale of the Combined Unit and, during the period in which the Combined Unit were rented, an amount equal to fifty per cent (50%) of the amount by which rental income from the Combined Unit exceeds the carrying costs with respect thereto.

(FAAC ¶ 89). The FAAC elsewhere alleges: "By way of the Oral Agreement, Plaintiff promised to Defendant an interest in the Combined Unit in the form of 25% of the proceeds of sale of the Combined Unit or 50% of the amount by which any rental income exceeded the carrying costs." (*Id.* at ¶ 126).

Defendant alleges that the renovation and combination of the apartment units caused the property to appreciate in value by approximately $4 million. (FAAC ¶¶ 101-02). Defendant seeks damages in the amount of $2 million, plus 50% of the amount received in rent that exceeds the monthly maintenance and

mortgage costs for the Combined Unit, plus "a constructive trust ... [that would] be imposed as to [her] interest in the Combined Unit[.]" (*Id.* at 14-15).[4]

## C.     The Motion to Dismiss

Plaintiff moved to dismiss Defendant's counterclaims on August 13, 2018.  (Dkt. #30).  Defendant filed an opposition on September 18, 2018 (Dkt. #32), and Plaintiff replied on October 1, 2018 (Dkt. #33).

**DISCUSSION**

## A.     Applicable Law

### 1.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint.  *A.V.E.L.A., Inc.* v. *Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (internal citations omitted).  When considering a motion to dismiss under Rule 12(b)(6), the court must "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal citations and quotation marks omitted).  A claimant prevails on a motion to dismiss if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

---

[4]     Defendant does not allege that the Combined Unit has been sold.

## 2. The New York Statute of Frauds

The New York State Statute of Frauds is embodied in New York General Obligations Law ("GOL") Section 5-701(a)(10), which states:

> (a) Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking ....

> (10) Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein.... "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.

GOL § 5-701(a)(10)[5]; *see also JF Capital Advisors, LLC* v. *Lightstone Group, LLC*, 25 N.Y.3d 759, 766 (2015) ("General Obligations Law § 5-701(a)(10) interdicts oral agreements to pay compensation for services rendered with respect to the negotiation of the purchase of real estate or of a business opportunity or business.").

Also relevant to this action, GOL Section 5-703(1) states:

> An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned,

---

[5] The Court recognizes that GOL § 5-701(a)(1) excepts from the written instrument requirement contracts for compensation to "an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman." Since Defendant has not argued that she falls within this exception, the Court does not address it further in this Opinion.

> surrendered or declared, unless by act or operation of
> law, or by a deed or conveyance in writing, subscribed
> by the person creating, granting, assigning,
> surrendering or declaring the same, or by his lawful
> agent, thereunto authorized by writing. But this
> subdivision does not ... prevent any trust from arising
> or being extinguished by implication or operation of law,
> nor any declaration of trust from being proved by a
> writing subscribed by the person declaring the same.

GOL § 5-703(1). Under this provision, "an interest in real property cannot be created ... except by a writing expressing the consideration, signed by the party against whom enforcement is sought." *Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc.* v. *Aegis Group PLC* ("*Messner Vetere*"), 974 F. Supp. 270, 273 (S.D.N.Y. 1997) (citing *C & K Realty Co.* v. *ISFC Fabrics Corp.*, 411 N.Y.S.2d 257 (1st Dep't 1978)).

A motion to dismiss may be granted if, drawing all reasonable inferences in favor of the non-moving party, the moving party "has a valid Statute of Frauds defense to [the] claims." *Messner Vetere*, 974 F. Supp. at 273; *see also Zeisling* v. *Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) (explaining the policy rationale of granting motions to dismiss when the moving party has a Statute of Frauds defense).

## B. Analysis

### 1. Defendant's Counterclaims for Unjust Enrichment, Promissory Estoppel, Specific Performance, and Constructive Trust Are Barred by the Statute of Frauds

Plaintiff argues that Defendant's counterclaims are barred by the Statute of Frauds because they rely on a purported oral agreement that was never reduced to writing. The Court agrees, with the exception of Defendant's

counterclaim for breach of an oral joint venture agreement, to which the Statute of Frauds does not apply. The Court therefore grants Plaintiff's motion to dismiss Defendant's counterclaims for unjust enrichment, promissory estoppel, specific performance, and constructive trust on Statute of Frauds grounds.

Plaintiff makes four arguments for application of the Statute of Frauds, which, taken together, persuade the Court. *First*, Plaintiff contends that the purported oral agreement between the parties falls within the scope of GOL § 5-701(a)(10), which covers "contract[s] to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein," and which defines "negotiating" to include "assisting in the negotiation or consummation of [a] transaction." GOL § 5-701(a)(10). Plaintiff argues that this section of the GOL applies because the alleged agreement was to compensate Defendant "for 'negotiating' the rental and then sale of the so-called Combined Unit." (Pl. Br. 10).

Plaintiff sources her claims to paragraphs 83 and 89 of the FAAC. (Pl. Opp. 9-10; Pl. Reply 2). Those paragraphs state in full:

> After further discussion with Duane and after performing research as to the economic viability of the idea described in paragraph "81" above, in November 2014, defendant formed the opinion that it would be preferable to renovate Unit 5E and Unit 5W so as to convert such units into one unit, rather than to maintain the integrity of each as a separate unit (the "Combined Unit Idea"), and to rent and, then sell, the resulting unit (the "Combined Unit") following such renovation.

(FAAC ¶ 83).

8

At the time referred to in paragraphs 87 and 88 above, plaintiff promised and represented to defendant that if she were to discharge the duties which plaintiff authorized defendant to perform in order to cause the renovation of Unit 5E and Unit 5W in accord with the Combined Unit Idea, defendant would receive compensation for her services in the form of a twenty-five per cent (25%) interest in the proceeds from the sale of the Combined Unit and, during the period in which the Combined Unit were rented, an amount equal to fifty per cent (50%) of the amount by which rental income from the Combined Unit exceeds the carrying costs with respect thereto.

(*Id.* at ¶ 89).

Defendant responds that the FAAC never alleges that she "negotiated" the sale, purchase, exchange, rental, or lease of the Combined Unit, or that she "negotiated" a loan. (Def. Br. 5-6, 9). Rather, the FAAC alleges merely that Defendant requested Plaintiff's permission to implement the idea of renovating the Combined Unit, and that Defendant then agreed, in reliance on Plaintiff's oral promises and representations, to perform services to implement the renovation in exchange for compensation. (*Id.* at 6). Plaintiff replies that paragraph 83 of the FAAC alleges explicitly that Defendant "agreed to execute a plan to combine two apartments 'and to rent and, then sell, the resulting unit[.]'" (Pl. Reply 2 (quoting FAAC ¶ 83)).

The Court agrees with Plaintiff that the FAAC alleges an agreement which, at least in part, involved plans to rent and sell the Combined Unit. (*See* FAAC ¶ 83). Accordingly, the Court finds that, to the extent Defendant rendered services "in negotiating the purchase, sale, exchange, [or] renting" of the Combined Unit, claims based on that portion of the oral agreement fall

within the scope of, and are barred by, GOL § 5-701(a)(10)'s writing requirement. The Court observes that Defendant also allegedly rendered services that arguably went beyond such negotiations and sound more in the vein of a construction manager or project funder. To the extent that the oral agreement "involved services that went beyond the negotiation or consummation of a business opportunity pursuant to General Obligations Law 5-701(a)(10)[,]" claims based on that portion of the agreement are not barred by § 5-701(a)(10). *Dorfman* v. *Reffkin*, 37 N.Y.S.3d 517, 524 (1st Dep't 2016) (ordering the dismissal of claims pursuant to § 5-701(a)(10) solely to the extent that an alleged agreement involved services rendered in "'assisting in the negotiation or consummation' of a business opportunity," and otherwise sustaining claims based on the remaining "wide variety of services" allegedly provided that went beyond such negotiation or consummation); *see also JF Capital Advisors*, 25 N.Y.3d at 765-66 (distinguishing "tasks performed so as to inform defendants whether to negotiate for the properties at issue," which are not covered by the Statute of Frauds, from tasks "performed as part of or in furtherance of negotiation for the subject properties," which are covered).

*Next*, Plaintiff argues that the oral agreement runs afoul of GOL § 5-703(1) "because it purports to convey an interest in real estate." (Pl. Br. 10; *see also* Pl. Reply 3). Here, Plaintiff relies on paragraph 126 of the FAAC, which states in full: "By way of the Oral Agreement, Plaintiff promised to Defendant an interest in the Combined Unit in the form of 25% of the proceeds of sale of the Combined Unit or 50% of the amount by which any rental income

exceeded the carrying costs." (FAAC ¶ 126 (quoted in Pl. Br. 10-11)). Defendant seeks to distinguish a form of compensation from an interest in the property itself, maintaining that she "did not allege that she would receive an interest in the Combined Unit." (Def. Opp. 7). More broadly, Defendant posits that compensation in the form of "sums of money" from rental income and sales proceeds differs from the transfer of an interest in the property itself. (*Id.* at 9-10). She argues that, as "GOL § 5-701(a)(10) does not apply to renovation of real estate," it does not apply to her allegations. (*Id.* at 7).

The Court rejects Defendant's attempts to characterize the alleged compensation as "sums of money" rather than an interest in property. The FAAC expressly alleges that the promised compensation would include "an interest in the proceeds from the sale of the Combined Unit" (FAAC ¶ 89), also described as "an interest in the Combined Unit in the form of 25% of the proceeds of sale" (*id.* at ¶ 126). Therefore, to the extent that Defendant rendered services beyond those covered by GOL § 5-701(a)(10)'s writing requirement, such additional services fall within the scope of GOL § 5-703(1)'s writing requirement.

*Third*, Plaintiff maintains that the Statute of Frauds applies to all of Defendant's counterclaims, including the equitable causes of action, because the statute applies to all agreements "implied in fact or law," GOL § 5-701(a)(10), and because all of Defendant's counterclaims are "simply a breach of contract claim under another name[,]" *Duckett* v. *Engelhard*, No. 15 Civ. 8645 (RJS), 2017 WL 512455, at *4 (S.D.N.Y. Feb. 6, 2017). (*See* Pl. Br. 11).

11

"It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label 'quantum meruit' or 'unjust enrichment' or 'promissory estoppel' to the underlying contract claim." *Morgenweck* v. *Vision Capital Advisors, LLC*, 410 F. App'x 400, 402 n.1 (2d Cir. 2011) (summary order). And thus, Plaintiff contends, Defendant may not recast her claims in equity to avoid the Statute of Frauds.

Defendant argues in opposition that her equity-based counterclaims fall within an exception to the Statute of Frauds for equity claims based on partial performance of an oral agreement to convey real property. (Def. Opp. 10). As support, Defendant relies on GOL § 5-703(4), which states: "Nothing contained in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance." GOL § 5-703(4). As the New York Court of Appeals has explained:

> Codified in New York's General Obligations Law, section 5-703, the doctrine of part performance is based on principles of equity, and specifically, recognition of the fact that it would be a fraud to allow one party to a real estate transaction to escape performance after permitting the other party to perform in reliance on the agreement. Part performance alone, of course, is not sufficient. The performance must be unequivocally referable to the agreement.

*Messner Vetere Berger* v. *Aegis Group*, 93 N.Y.2d 229, 235 (1999) (internal citations omitted); *see also Fiske* v. *Fiske*, 464 N.Y.S.2d 282, 285 (4th Dep't 1983).

Defendant argues that she "satisfied each element of the doctrine of part performance" because she has adequately alleged that the parties entered a

sufficiently definite oral agreement (Def. Opp. 12-13); that Defendant performed her part of the agreement, both by conceptualizing the Combined Unit renovation project and by "devoting hundreds of hours implementing it and bringing [it to] completion" (*id.* at 13); that Defendant "relied to her detriment on the oral agreement," both by performing services and by co-signing a $600,000 mortgage note and inducing her sister to transfer $50,000 to a joint account allocated to the renovation project (*id.*); that her "actions are unintelligible or, at least extraordinary unless viewed as constituting performance by her pursuant to her oral agreement with Plaintiff" (*id.*); and that her actions are "unequivocally referable to the oral agreement" (*id.* at 16).

The Court disagrees. To start, as Plaintiff correctly points out, there is no partial performance exception to GOL § 5-701; the exception stated in § 5-703(4) applies solely to § 5-703. *See Gural* v. *Drasner*, 977 N.Y.S.2d 218, 221 (1st Dep't 2013). (*See also* Pl. Reply 3). So, to the extent that Defendant rendered services "in negotiating the purchase, sale, exchange, [or] renting" of the Combined Unit, claims based on that portion of the agreement cannot be salvaged from the GOL § 5-701(a)(10) bar by pleading partial performance. However, to the extent that Defendant has stated claims for services rendered beyond those covered by GOL § 5-701(a)(10), a partial performance analysis becomes relevant.

Plaintiff challenges the partial performance exception by arguing that Defendant's performance was not "unequivocally referable" to the alleged agreement, as Defendant's conduct may also be explained, in the broader

context of the parties' familial relationship, as a daughter-in-law lending real estate "know-how" to a family member who had allowed her to live rent-free for years in a luxury apartment. (Pl. Reply 4). These arguments resonate with the Court. "For performance to be unequivocally referable to the agreement, there must be *no* explanation for the parties' conduct other than performance of the alleged agreement." *Messner Vetere*, 974 F. Supp. at 274 (emphasis added). That is not the case here, as a (indeed, the most) plausible explanation for Defendant's conduct was that she was lending expertise and know-how to a family member who had provided her with rent-free living for many years. Thus, Defendant has failed adequately to state the elements of a partial performance exception to the § 5-703 writing requirement.

*Fourth*, Plaintiff argues that Defendant cannot "use promissory estoppel to avoid the Statute of Frauds" because she has failed to plead "unconscionable injury." (Pl. Br. 11). *See Darby Trading Inc.* v. *Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008) ("[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation."). Quite to the contrary, Plaintiff contends that "Defendant received enormous value, including luxury accommodations, from Plaintiff[.]" (Pl. Br. 18). Defendant does not contradict these assertions. (*See* Def. Opp. 19-20). Defendant has therefore conceded that she cannot rely on the "unconscionable injury" exception to the Statute of Frauds for claims of promissory estoppel.

Lastly, with particular respect to her counterclaim for breach of an oral joint venture agreement, Defendant points out, correctly, that the New York Statute of Frauds does not apply to "oral joint venture agreements." (Def. Opp. 17). *See Plumitallo* v. *Hudson Atl. Land Co.*, 903 N.Y.S.2d 127, 128 (2d Dep't 2010) ("The statute of frauds does not render void oral joint venture agreements to deal in real property because the interest of each partner in a partnership is deemed personalty. The plaintiff is not seeking to acquire an interest in real property, but rather, is asserting an alleged interest in joint venture assets." (internal citations omitted)). However, for all of the reasons stated in this section, the Statute of Frauds bars all of Defendant's other counterclaims.

## 2. Defendant's Counterclaims for Breach of an Oral Joint Venture Agreement, Unjust Enrichment, Promissory Estoppel, and Constructive Trust Also Fail on the Merits

Alternatively, Plaintiff argues that each of Defendant's counterclaims should be dismissed on the merits for failure to plead mandatory elements. (Pl. Br. 12-22). Since Defendant's counterclaim for breach of an oral joint venture agreement is her sole counterclaim not barred by the Statute of Frauds, the Court considers the merits arguments as to this claim first. The Court then considers Plaintiff's remaining merits arguments, and finds that they provide independent bases for the dismissal of the counterclaims for unjust enrichment, promissory estoppel, and constructive trust.

### a. Defendant Has Failed to State a Claim for Breach of an Oral Joint Venture Agreement

Under New York law:

> formation of a joint venture requires: [i] two or more persons entered into a specific agreement to carry on an enterprise; [ii] the agreement must manifest the intent of the parties to be joint venturers; [iii] a contribution by each joint venturer of property, financing, skill, knowledge, or effort to the joint enterprise; [iv] some degree of joint control over the enterprise; and [v] a provision for the sharing of profits and losses.

*Nuss* v. *Sabad*, 976 F. Supp. 2d 231, 246 (N.D.N.Y. 2013). Failure to provide for a sharing of losses is generally fatal to pleading a joint venture. *See, e.g.,* *Cosy Goose Hellas* v. *Cosy Goose USA, Ltd.*, 581 F. Supp. 2d 606, 622 (S.D.N.Y. 2008) ("[I]n order for an agreement to qualify as a joint venture, co-venturers must agree, either expressly or impliedly, to share liability for the possible obligations, debts, and losses of the joint venture itself.").

Plaintiff seeks dismissal of Defendant's joint venture claim on the merits "for failure to allege joint control by the purported venture partners; failure to allege a provision for apportionment of losses; and failure to allege a sufficiently specific joint venture agreement." (Pl. Br. 18). Plaintiff argues that the FAAC fails to allege "joint control" of the venture because Defendant asserts that she would "play the lead role" and "bear primary responsibility." (FAAC ¶ 88). The counterclaim also fails to allege a "provision for the sharing of ... losses," since Defendant never alleges that she bore any risk of loss. *Natuzzi* v. *Rabady*, 576 N.Y.S.2d 326, 328 (2d Dep't 1991). (*See also* Pl. Br. 20). Finally, according to Plaintiff, the FAAC does not allege facts to support an inference that the

agreement manifested "the intent of the parties to be joint venturers," *Nuss*, 976 F. Supp. 2d at 246, as Defendant has merely alleged "a vaguely-defined project" and "indefinite compensation." (Pl. Br. 20).

Defendant counters that she has adequately pleaded all elements of a joint venture *except* a provision for the sharing of losses, because she has pleaded "an agreement between Plaintiff and Defendant to carry out the Renovation Project; contributions of financing (by Plaintiff and Defendant), property (by Plaintiff), and skill, knowledge and effort (by Plaintiff) [*sic*]; a degree of some control by each co-venturer (Plaintiff and Defendant); and a provision for the sharing of profits." (Def. Opp. 17). While Defendant acknowledges that the absence of a provision for the sharing of losses is generally fatal to a pleading of joint venture, she urges the Court to depart from the majority of case law on this issue and instead follow a "minority opinion … that where there is 'no reasonable expectation' that the joint venture would suffer losses, the omission of a provision as to the sharing of losses is not fatal." (Def. Opp. 17-18 (citing *Cobblah* v. *Katende*, 713 N.Y.S.2d 723, 724 (1st Dep't 2000))).

Even were such a view the majority opinion, the Court would decline the invitation here. Drawing all inferences in Defendant's favor, the parties invested substantial sums of money in renovating the Combined Unit, which could easily have resulted in losses on resale or in the rental market. The allegations in the FAAC cannot plausibly support a finding that the parties had

"no reasonable expectation" of losses from the renovation project. Therefore, Defendant has failed adequately to plead an oral joint venture agreement.

As additional bases for dismissal, Plaintiff contends in reply that Defendant offers no response to Plaintiff's arguments that (i) the FAAC fails to plead joint control (or even a role for Plaintiff in the joint venture) and (ii) fails to plead a specific agreement manifesting the intent of the parties to be joint venturers. (Pl. Reply 10). The Court finds the first argument unpersuasive. At a minimum, the FAAC alleges that Plaintiff controlled the property through the Trust (FAAC ¶¶ 65-67, 77-78), and that her approval was necessary to begin the renovation project (*id.* at ¶ 87). As to the issue of intent, however, the Court agrees with Plaintiff. "Because the creation of a joint venture imposes significant duties and obligations on the parties involved, the parties must be clear that they intend to form a joint venture, which is a fiduciary relationship, and not a simple contract." *Learning Annex Holdings, LLC* v. *Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 412 (S.D.N.Y. 2011). "The ultimate inquiry … is whether the parties have so joined their property, interests, skills, and risks their contributions have become one and their commingled properties and interests have been made subject to each of the others' actions, on the trust and inducement that each would act for their joint benefit." *Zeising* v. *Kelly*, 152 F. Supp. 2d 335, 348 (S.D.N.Y. 2001). Here, the FAAC fails to allege anything that suggests either an express or an implied intent to so comingle property, contributions, and fate.

In sum, Defendant's failure to plead a provision for the sharing of losses is fatal to a finding that a joint venture was formed, as is Defendant's failure to plead that the parties intended to create a joint venture. The Court therefore dismisses the counterclaim for breach of an oral joint venture agreement. The Court now proceeds to consider Plaintiff's merits arguments against Defendant's other counterclaims as potential independent bases for dismissal.

### b. Defendant Has Failed to State a Claim for Unjust Enrichment

To plead unjust enrichment under New York law, the claimant must show "that [i] the other party was enriched, [ii] at that party's expense, and [iii] that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd.* v. *Wildenstein*, 16 N.Y.3d 173, 182 (2011). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello* v. *Verizon N.Y.*, 18 N.Y.3d 777, 790 (2012).

Plaintiff argues that Defendant's counterclaim for unjust enrichment fails on the merits for three different reasons: it is duplicative of her contract claim; it fails to allege that *Plaintiff* was unjustly enriched by the appreciation of the Combined Unit, since the property is owned by the Wesla E. Hanson Trust; and it would not offend equity and good conscience "for Plaintiff to retain the value of the combined unit and the rental proceeds" given that Plaintiff showed exceptional generosity toward Defendant in the past, including by permitting her "to live rent-free for years in an apartment valued at $2.8 million." (Pl. Br. 15-16). Defendant responds to two of Plaintiff's three arguments.

As to the issue of a duplicative claim, Defendant asserts, without citation to authority, that "[t]his argument lacks merit at this phase of this action." (Def. Opp. 20). The Court is not persuaded. Because New York law prohibits a claim for unjust enrichment that "simply duplicates, or replaces, a conventional contract or tort claim," *Corsello*, 18 N.Y.3d at 790, the Court may grant judgment on this issue as a matter of law at the motion to dismiss stage.

As to the issue of whether Plaintiff was personally enriched, Defendant points out that Plaintiff has absolute power to revoke the Trust, and thus concludes that Plaintiff would indeed be unjustly enriched by the appreciation of property owned by the Trust — such that, for "the purpose of 'unjust enrichment,' there is no meaningful distinction between Plaintiff and the Trust." (Def. Opp. 3-5, 20). The Court agrees, although Defendant's victory on this point is not enough to save her counterclaim from dismissal on the basis that it is duplicative. And as to Plaintiff's argument that Defendant has failed to allege conduct that would offend equity and good conscience, Defendant makes no response at all and has therefore waived the issue. (Def. Opp. 20). Defendant's counterclaim for unjust enrichment is thus dismissed.

### c.    Defendant Has Failed to State a Claim for Promissory Estoppel

To plead promissory estoppel under New York law, a plaintiff must allege "[i] a clear and unambiguous promise, [ii] reasonable and foreseeable reliance by the promisee, and [iii] unconscionable injury to the relying party as a result of the reliance." *Readco, Inc.* v. *Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996).

Plaintiff argues that, on the merits, Defendant's pleading falls at the first hurdle because the "terms of the purported agreement are vague and ambiguous" as a result of their not having been reduced to writing.  (Pl. Br. 16).  Specifically, according to Plaintiff, the allegations fail sufficiently to define "the scope of Defendant's purported work [and] the amount of her purported compensation[.]"  (Pl. Br. 13; *see also* Pl. Reply 9).  Plaintiff asserts that the allegations of the terms of the agreement are solely that Defendant would "play the lead role in connection with the implementation of the Combined Unit Idea" and "bear primary responsibility for the massive amount of work which … would have to be performed" (FAAC ¶ 88), and that Defendant would be compensated with shares of the "proceeds from the sale" and of the amount by which the rental income exceeds the "carrying costs" (*id.* at ¶ 89).  (*See also* Pl. Br. 14).  In response, Defendant contends that the agreement specified an amount certain for compensation: 25% of sale proceeds and 50% of rental income in excess of the carrying costs.  (Def. Opp. 13).  She makes no comparable effort to clarify the scope of the work she was to perform.

Nonetheless, the Court finds that, drawing all reasonable inferences in favor of Defendant, the allegations in the FAAC are sufficient to support a finding of a clear and unambiguous promise.  The FAAC alleges that Plaintiff asked Defendant to "to play the lead role in connection with the implementation of the Combined Unit Idea," and "to bear primary responsibility" for implementing the renovation project.  (FAAC ¶ 88).  In exchange, Plaintiff promised to compensate Defendant in an amount certain.

At later stages of the litigation, Plaintiff might well be able to establish that the alleged oral agreement was unclear or ambiguous. But she has not met that burden at the motion to dismiss stage.

As to the second element of a promissory estoppel claim, reasonable and foreseeable reliance by the promisee, Plaintiff contends that Defendant has "not adequately plead[ed] reliance on the purported oral agreement" because the FAAC alleges that Defendant and her husband hired architects and met with builders during the spring and summer of 2014, whereas the oral agreement with Plaintiff did not allegedly occur until January 2015. (Pl. Br. 17 (citing FAAC ¶¶ 82, 86)). In other words, Defendant claims to have met with architects and builders *before* the purported agreement was reached. (Pl. Reply 9). Plaintiff points out as well that the FAAC alleges that Defendant "performed an enormous amount of work" in reliance on the oral promise "between April 2014 and March 2016," even though the oral agreement did not allegedly take place until January 2015. (Pl. Br. 10 (citing FAAC ¶¶ 89, 95)). While Defendant fails to respond to this argument, the Court nonetheless finds it unpersuasive. Defendant does not allege that she relied on Plaintiff's promise in meeting with builders and hiring architects in 2014; she instead alleges that she relied on the promise in playing the lead role in, and bearing primary responsibility for, implementing the Combined Unit renovation *following* the parties' agreement.

Plaintiff also maintains that any reliance by Defendant on the oral agreement would have been unreasonable because Defendant is "a

sophisticated real estate developer … [and] was surely familiar with the custom of reducing million-dollar agreements, and agreements for the transfer of real property, to writing." (Pl. Br. 17).  Given Defendant's sophistication in the real estate realm, Plaintiff contends that, in the absence of a written contract, any reliance by Defendant would have been "unreasonable and insufficient to support a claim for promissory estoppel." (*Id.*).  Defendant responds that, as a result of her familial relationship to Plaintiff, it would have been "awkward and unseemly" for her to have demanded a written agreement, and that Defendant was entitled to reasonable reliance on Plaintiff's oral promise because the parties were in a fiduciary relationship.  (Def. Opp. 7).  Plaintiff replies that a concern with feeling "awkward and unseemly" does not create an exception to the Statute of Frauds.  (Pl. Reply 7).  Plaintiff does not reply to Defendant's fiduciary argument.

Plaintiff's assertion that there is no "awkward and unseemly" exception to the Statute of Frauds is largely irrelevant to analyzing the merits of Defendant's promissory estoppel claim.  That said, on the issue of whether, in the context of a promissory estoppel claim, the existence of a fiduciary relationship weighs in favor of finding that reliance on an oral promise was reasonable, the cases Defendant cites in support are inapposite.  (*See* Def. Opp. 7).  In *Matter of Greiff*, 92 N.Y.2d 341 (1998), the Court of Appeals considered the proper burden of persuasion as to the legality and enforceability of a prenuptial agreement, without considering promissory estoppel.  *Id.* at 345.  In *Gordon* v. *Bialystoker Center & Bikur Cholim, Inc.*, 45 N.Y.2d 692

(1978), the Court of Appeals announced that a confidential relationship shifted the burden to establish that an agreement was unspoiled by "fraud, undue influence or coercion," but again did not discuss promissory estoppel. *Id.* at 698. Nor, for that matter, do *Christian* v. *Christian*, 42 N.Y.2d 63 (1977), *Sharp* v. *Kosmalski*, 40 N.Y.2d 119 (1976), *Robinson* v. *Day*, 960 N.Y.S.2d 397 (1st Dep't 2013), or *Sepulveda* v. *Aviles*, 762 N.Y.S.2d 358 (1st Dep't 2003), speak to the role of a fiduciary relationship in a court's analysis of the reasonableness of reliance on an oral agreement for purposes of promissory estoppel. Nonetheless, at this stage of the litigation, Plaintiff has failed to show that Defendant's reliance was unreasonable as a matter of law. Drawing all inferences in Defendant's favor, the Court finds that Defendant relied on Plaintiff's representations, and that the reliance was both reasonable and foreseeable.

It is the third element — unconscionable injury to the relying party — where Defendant's counterclaim fails on the merits. Defendant obtained significant benefit from Plaintiff in the form of rent-free accommodations over the course of multiple years. Defendant's sophistication in the real estate domain, as well the fact that she is an attorney, also weigh against a finding of unconscionability. Accordingly, the Court finds that the facts alleged in the FAAC could not reasonably support an inference of unconscionable injury arising from Defendant's reliance on Plaintiff's promise of compensation for her contributions to the renovation project. Defendant's failure adequately to plead

the third element of a claim for promissory estoppel is thus an independent

basis for dismissing this claim.

### d. Defendant Has Failed to State a Claim, and Has Abandoned Her Claim, for a Constructive Trust Remedy

"A constructive trust is a remedy, not a cause of action, and is to be

imposed only in the absence of an adequate remedy at law." *Anwar* v. *Fairfield*

*Greenwich, Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) (internal citations

and quotation marks omitted). "[F]our elements must be alleged: [i] a

confidential or fiduciary relationship, [ii] a promise express or implied, [iii] a

transfer in reliance thereon, and [iv] unjust enrichment." *Gottlieb* v. *Gottlieb*,

560 N.Y.S.2d 477, 478 (2d Dep't 1990).

Plaintiff argues, and the Court agrees, that Defendant cannot state a

claim for a constructive trust remedy because Defendant has counterclaimed

for money damages and thus has an "adequate remedy at law." (Pl. Br. 20).

Next, Plaintiff contends that the FAAC fails adequately to plead a fiduciary

relationship; a transfer in reliance on the oral promise, given that Plaintiff

began incurring expenses months before the promise occurred; or unjust

enrichment of Plaintiff as a result of Defendant's contributions, especially given

Plaintiff's past generosity toward Defendant. (*Id.* at 21-22). Defendant fails to

respond in any manner to Plaintiff's argument for dismissal of the counterclaim

for a constructive trust remedy. Accordingly, that counterclaim has been

abandoned and is dismissed. *See, e.g.*, *Lipton* v. *County of Orange*, 315 F.

Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a

claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

### e. Defendant's Claim for Specific Performance of an Oral Agreement Remains Barred by the Statute of Frauds

Under New York law, to "create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp.* v. *N.Y.S. Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) (internal citation omitted). "In general, specific performance will not be ordered where money damages would be adequate to protect the expectation interest of the injured party." *Sokoloff* v. *Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415 (2001) (internal citations and quotation marks omitted).

Plaintiff argues that Defendant has failed to "allege a sufficiently definite agreement," for substantially the same reasons that Plaintiff argued the agreement was unclear and ambiguous. (Pl. Br. 13-14). Plaintiff argues in particular that "[n]either 'proceeds' nor 'carrying costs' is sufficiently defined to manifest assent as to all material terms. For example, Defendant seems to view 'proceeds' as not accounting for the enormous costs of the renovation and simply encompassing the increased value of the property." (*Id.* at 14). Plaintiff argues as well that specific performance is unavailable because Defendant has stated a claim for monetary damages. (*Id.* (citing *Sokoloff*, 96 N.Y.2d at 415)). Further, Plaintiff contends that Defendant has failed entirely to respond to her arguments for dismissal of the counterclaim for specific performance, and hence the counterclaim should be deemed abandoned. (Pl. Reply 7).

Plaintiff is arguably incorrect on her definiteness and abandonment points. Defendant's opposition brief does assert that all material terms of the purported oral agreement are sufficiently precise to satisfy New York's "definiteness doctrine." (Def. Opp. 12). The scope of work is defined, in that the FAAC alleges that Plaintiff asked Defendant to "to play the lead role in connection with the implementation of the Combined Unit Idea," and "to bear primary responsibility" for implementing the renovation project. (FAAC ¶ 88). And with respect to compensation, Defendant points out that the agreement specified an amount certain: 25% of sale proceeds and 50% of rental income in excess of the carrying costs. (*Id.* at ¶ 13). As with the Court's analysis of the promissory estoppel claim, drawing all reasonable inferences in favor of Defendant leads the Court to conclude that the FAAC alleges a sufficiently definite agreement.

On the other hand, Plaintiff is correct that Defendant has failed to respond to the argument that specific performance should be unavailable because monetary damages would suffice. Plaintiff is also correct that Defendant seeks monetary damages for her counterclaim for specific performance. (*See* FAAC 15, ¶¶ 113-19). But in any event, as noted earlier, any such claim would be barred by the Statute of Frauds.

**CONCLUSION**

For the reasons stated in this Opinion, Plaintiff's motion to dismiss all five of Defendant's counterclaims is GRANTED.  The Clerk of Court is directed to terminate the motion at docket entry 30.  The parties are directed to file a revised case management plan with the Court on or before March 15, 2019.

SO ORDERED.

Dated:     February 26, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge